UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | Crim. No. 06-101 |
| | ) | |
| **HAROL RODRIGO SUAREZ** | ) | |
| | ) | |
| | ) | |

### GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S REQUEST FOR TRANSFER TO CORRECTIONAL TREATMENT FACILITY

**COMES NOW** the United States of America, by and through the undersigned attorney, and respectfully asks this court to deny defendant Harol Rodrigo Suarez's (hereinafter "Suarez") request for transfer to the Correctional Treatment Facility (hereinafter "CTF"). In support thereof, the government states the following:

Suarez was originally charged with federal narcotics offenses by complaint, filed on March 29, 2006. From October 2004 to April 4, 2006, Suarez and the other charged defendants conspired to distribute hundreds of kilograms of cocaine, intending and knowing that the cocaine would be unlawfully imported into the United States. To accomplish their scheme, the defendant and his associates, Colombian paramilitaries, sought to exchange heroin and cocaine for weapons, such as AK-47 rifles and C-4 explosives.

On April 25, 2006, a federal grand jury sitting in the District of Columbia returned and filed a one-count indictment charging Suarez and four others with conspiracy to distribute five (5) kilograms or more of cocaine, intending or knowing that it would be unlawfully imported into the United States from the Republics of Colombia, Panama, Nicaragua, and elsewhere outside of the United States. On April 25, 2006, a warrant was issued, and on January 9, 2007

Suarez was extradited from Panama to the United States. Since his arrest and transfer to the United States, the defendant has been held at the District of Columbia Jail (hereinafter "Jail").

On February 13, 2008, this court held a status conference to discuss, among other issues, discovery proceedings. As the defendant's motion suggests, there is substantial evidence against the defendant which must be reviewed. That evidence includes recordings of telephone conversations and video tapes which are stored on compact-disks. The defendant has asked this court to have him transferred to CTF, on the grounds that doing so would allow him to more effectively assist in his defense. The defendant's motion is grounded on the proposition that he has greater access to computers at CTF, a suggestion that is not supported by the facts. In fact, since the defendant's motion was filed, the Jail has added to its already extensive computer facilities. Whenever the court is faced with a request that is superseded by an intervening event which would prevent the court from granting "any effectual relief whatever" the request should be dismissed as moot. *Mills v. Green,* 159 U.S. 651, 653 (1895). For the reasons stated below, the defendant's request is moot, and consequently, must be dismissed.

A. *The defendant has the same or greater access to the discovery material at the D.C. Jail.*

The defendant has access to computers with cd/dvd capability at the D.C. Jail. On February 19, 2008, the federal public defender supplied the Jail Warden with a blank laptop for inmate review of surveillance videos. Moreover, whereas the CTF law library has one computer, the Jail law library has fifteen, allowing the defendant with exponentially more access to computers in order to effectively review the discovery material. In addition to the ability of the defendant to view the videos, the government will send defense counsel cassette tapes of the vast majority of the recorded calls in the case, which the defendant can listen to at his leisure with a

simple cassette recorder of "Walkman" device. Based on the aforementioned facts, it is clear that by remaining at the Jail, the defendant will have more than adequate access to the evidence.

### B.  Security and practical considerations weigh against the transfer

Any interest that the defendant may have in being transferred to CTF must be tempered against the government's need to insure the safe and effective prosecution of the defendant and the other members of the conspiracy. Due to his affiliation with a specially designated terrorist organization, the AUC, the defendant's transfer to CTF would pose a security risk. At the status conference, defense counsel for co-defendant Castro, a member of the AUC who Suarez introduced as his "boss" at a CS meeting in Cartagena, Columbia, suggested that the two defendants could share the same laptop. The obvious implication is that the two would review evidence together, and given their AUC affiliation, such mutual contact at CTF could present a safety concern for Mr. Suarez, Mr. Castro, and other witnesses in the case; as well as lead to possible obstruction of justice.  Moreover, the transfer of the defendant and subsequent contact and discussion about the case with Mr. Castro could taint both defendants' ability to testify should either defendant decide at some point in the future, before or after trial, that it is in their best interest to cooperate with the government.

**WHEREFORE**, for the foregoing reasons, the government respectfully requests that this honorable court deny the defendant's motion for transfer to the Correctional Treatment Facility.

                                          Respectfully submitted,

                                          _____/s/_____
                                          James A. Faulkner
                                          Trial Attorney
                                          Narcotic and Dangerous Drug Section
                                          Criminal Division
                                          U.S. Department of Justice
                                          (202) 616-8648
                                          Jim.faulkner@usdoj.gov