

**U.S. Department of Justice**

Criminal Division
Narcotic and Dangerous Drug Section

---

1400 New York Ave, NW
Bond Building, 8th Floor
Washington, D.C. 20005

June 23, 2008

Edward Charles Sussman, Esq.
Manuel J. Retureta, Esq.
601 Pennsylvania Avenue, NW
Suite 900-South Building
Washington, DC 20004-2601
(202) 737-7110
(202) 220-3073

Re: *United States of America v. Harol Rodrigo Suarez-Garcia*; cr.no 06-101 (GK)

Dear Counsel:

     In accordance with Rule 16(a)(1)(G), Fed. R. Evid. (FRE), this notification informs you of the government's intention to offer expert testimony. Summarized below are the backgrounds of two experts and the subjects on which they are prepared to testify, as well as information regarding lay opinion and expert testimony to be provided by a Confidential Source ("CS").

<u>I. Background and Organizational Structure of the AUC in Colombia</u>

     Special Agent Jim Billings has served the Drug Enforcement Agency (DEA) for more than ten years. He has worked in five different cities, including Cartagena, Colombia (2003–2006) and Caracas, Venezuela (2006–2007). During his time with DEA, Special Agent Billings has worked on hundreds of narcotics investigations. These investigations targeted various drug trafficking organizations, both in the United States and foreign countries, involved in the manufacturing, transportation, and distribution of various controlled substances including cocaine, marijuana, methamphetamines, and heroin; the diversion of certain types of chemicals and legal drugs for illicit purposes; and the laundering of drug proceeds.

     While assigned to the Cartagena Resident Office, Special Agent Billings worked with various Colombian law enforcement and military agencies in furtherance of counter-narcotics efforts. These assignments included working with the Colombian Federal Intelligence Service *Departamento Administrativo de Seguridad* (DAS) and a Colombian National Police Antinarcotics team (CNP-Antin) operating primarily on the north coast of Colombia.

     Most of the investigations Special Agent Billings was involved in during his time in Colombia related to the Colombian paramilitary group *Auto Defensas Unidas de Colombia*

(AUC). A large majority of these investigations targeted various members of the AUC for their involvement in drug trafficking activities.

Based upon his knowledge, training, and experience, he is prepared to testify regarding the following topics at trial: (1) the history and military and political objectives of the AUC; (2) the organizational structure of the AUC; and (3) the AUC's general involvement and history of drug and weapon trafficking activities, including the involvement and history of drug and weapon trafficking to make money.

You are hereby notified that this expert will not be asked about the AUC's designation as a Foreign Terrorist Organization by the Department of State.

## II. Drug and Weapon Trafficking Routes Used by the AUC to Send Cocaine, Heroin, and Weapons to the US

Phil Welcome is the Section Chief of the Strategic Planning and Support Section of the Drug Enforcement Agency (DEA), where he is currently responsible for the management of DEA's Drug Flow Attack Strategy and oversight of DEA's Sensitive Investigative Units.

For the last eighteen years, Section Chief Welcome has worked with the DEA combating drug crimes in the United States, South America, and Central America. He served as Special Agent in Baltimore investigating homicides involving heroin, cocaine, and crack before being assigned to Lima, Peru, where he worked with the Riverine Program patrolling Peruvian waterways to interdict loads of cocaine leaving the production areas of that country. While in Peru, he also worked with the Precursor Chemical Program, which focused on diverting the chemicals used as precursors to cocaine, heroin, and methamphetamines. He also focused efforts on the investigation of illegal weapons trafficking among Central and South Americans. Section Chief Welcome worked in Tacoma, Washington in the High Intensity Drug Trafficking Areas (HIDTA) Task Force primarily combating black tar/Mexican heroin, cocaine, "club drugs," and methamphetamines.

From 2003 to July 2006, Section Chief Welcome was the Country Attaché in Managua, Nicaragua. During that time, his primary cases dealt with drug and weapon transit zones. As a DEA Supervisor, he supervised the office investigations of cocaine, heroin, and weapon traffickers.

Presently, he is assigned to the DEA headquarters. While there, he has been responsible for the Mexico/Central America Section where he was responsible for Central America and the DEA Drug Flow Attack Strategy, developing strategy to reduce the flow of drugs into the US. He was promoted to Section Chief of the Mexico/Central America Section.

Based upon his knowledge, training and experience, he is prepared to testify about the following topics at trial: (1) the organization of international drug trafficking groups; (2) the production, transportation, distribution, and sale of cocaine and heroin from Columbia to other countries including the United States; (3) the location of the primary source countries of cocaine and heroin destined for the United States; (4) the identification of groups who have historically

supplied cocaine and heroin to the United States; (5) the nature of relationships among members of drug trafficking organizations, including sellers and distributors, and how those relationships often remain intact while the groups are successful in their unlawful endeavors; (6) the drug trafficking routes used for cocaine and heroin produced in Columbia, South America being transported into the United States, particularly with regard to how cocaine and heroin are transported to Central America and Mexico for transshipment to the United States; (7) that no significant quantity of cocaine or heroin remains in Central America or Mexico and that virtually all of the cocaine and heroin is sent to the United States; (8) the methods and techniques used by drug trafficking organizations including the means used for the transportation (air, land, and maritime) in moving cocaine and heroin from Columbia to the United States; (9) the relative prices of cocaine and heroin during the time period relevant to the conspiracy charged in this case; and (10) the nature of weapons trafficking as it relates to drug trafficking and the roles that weapons traffickers play in the illegal drug industry.

You are hereby notified that the expert will not be asked to offer an opinion as to where the cocaine, heroin, or weapons being transported or distributed by the defendants were destined. The expert will explain to the jury, however, that in determining where the cocaine, heroin, or weapons were destined, the following factors may be relevant: (1) the packaging, labeling, or impressions on cocaine or heroin as indicative of its source or other information about the product; (2) the destination of prior shipments by the AUC; (3) the currency used to make completed payments and the source of those funds; (4) statements made by drug or weapons traffickers as to their intended destination; (5) other circumstantial evidence, including maps, evidence of phone calls to foreign countries, travel to other countries, emails to contacts in other countries, and similar evidence.

III. Coded Language Used By Central and South American Drug Trafficking Organizations

The government will also present lay opinion and expert testimony under FRE 701 and 702 from the CS regarding code words often used by cocaine, heroin, and weapons trafficking groups in Central and South America, based on ten years experience interacting regularly with such organizations.

From 1997– February 2001, the CS worked with the Remon Way / Cruz-Garcia drug trafficking organization. In the late 1990's the Remon-Way / Cruz-Garcia organization transported cocaine by land through Central America to the U.S., and heroin by abdominal drug couriers on airlines from Central America to the United States. Additionally, the organization transported U.S. drug dollars from the United States to Central America in stolen Caterpillar road construction equipment which the company used in a legitimate road construction company in Guatemala called "Remway", owned by two brothers – Francisco Remon-Way and the late Daniel Remon-Way.

The CS was a mechanic for the organization on the Remway payroll. He also worked as a driver and assistant to a high-ranking associate of the Remon Way brothers by the name of Victor Manuel Cruz-Garcia, who managed much of the logistics for the organization in bringing cocaine from Colombia and Costa Rica to Guatemala and Mexico, and transporting heroin from Guatemala to the United States through human internal transporters, and the transportation of

drug dollars and weapons in stolen Caterpillar road equipment from the U.S. and Mexico to Guatemala. After being stolen in the United States, minor alterations were made to the road equipment so that it could be used to transport dollars into Mexico. Once in Mexico, the equipment (already loaded with dollars), was further modified to fit disassembled AK-47 assault weapons and bullet magazines.[1] The equipment was then transported to Guatemala and El Salvador with the dollars and weapons. Upon arrival in Guatemala and El Salvador, the dollars and weapons were unloaded, and the AK-47's were reassembled. One of the CS' jobs for the organization was to re-modify the machinery for service in the Remway construction company after the drugs and weapons had been taken out.

In 2000, the CS began providing information to DEA and has continued to do so until the present. As such, he has had regular contact, under the direction of the DEA, with cocaine, heroin, and weapons traffickers, as well as money launderers, based in Central and South America and in various cities in the States, most notably Las Vegas. His ten years experience interacting regularly with such groups has allowed him to develop a lay expertise of terms and code words used by these organizations to conduct their business. Although he will only testify to recorded conversations and emails to which he was a party, his background understanding of these code words, based on his experience, will assist him in explaining their meaning to the jury and will assist the jury's understanding of the evidence presented.

Sincerely,

_____

Jim Faulkner, Trial Attorney
United States Department of Justice
Narcotic and Dangerous Drug Section
202-616-8648

---

[1] The CS observed this process in Mexico on two occasions.