UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>HAROL RODRIGO SUAREZ-GARCIA )<br>a/k/a "Jose Luis Herrera," a/k/a )<br>"Chico," a/k/a "Dominick," )<br>)<br>NESTOR DARIO CASTRO, )<br>a/k/a "Alberto," )<br>)<br>Defendants. ) | Crim. No. 06-101 (GK) |

**MEMORANDUM OF LAW ON ADMISSIBILITY OF TAPES AND TRANSCRIPTS
AND PROPOSED TRIAL TRANSCRIPT PROCEDURES**

**COMES NOW** the United States of America, by and through the undersigned attorney, and hereby submits this memorandum of law in support of the government's offer of tapes and transcripts into evidence. The government respectfully submits that said exhibits are admissible and should be received into evidence, and sets forth the proposed transcript procedures it intends to utilize at trial.

**I. TAPE RECORDINGS OF CONVERSATIONS ARE ADMISSIBLE ONCE THE GOVERNMENT LAYS THE PROPER FOUNDATION**

Admission of tape recordings at trial rests with the sound discretion of the trial court. *United States v. Slade*, 627 F.2d 293, 301 (D.C. Cir. 1980), *cert. denied*, 449 U.S. 1034 (1980); *see also Monroe v. United States*, 98 U.S. App. D.C. 228, 234, 234 F.2d 49, 55, *cert. denied*, 352 U.S. 873 (1956); *United States v. Biggins*, 551 F.2d 64 (5th Cir. 1977). The party introducing a

tape into evidence has the burden of going forward with sufficient evidence to show the recording is an accurate and trustworthy reproduction of the conversation recorded. *United States v. Haldeman*, 559 F.2d 31 (D.C. Cir. 1976), *cert. denied sub nom*; *Mitchell v. United States*, 431 U.S. 933 (1977). In a criminal trial, generally this will require the government to show: (1) the competency of the operator; (2) the fidelity of the recording equipment; (3) the absence of material deletions, additions, or alterations in the relevant part of the tape; and (4) the identification of the relevant speakers. Although this is the preferred foundation, there are not strict particularized standards governing the admissibility of tapes since the purpose of the inquiry is to establish and ensure the accuracy of the recording. The standard for authentication is not that the possibilities of misidentification and alteration be eliminated absolutely, but as a matter of reasonable probability. *Id.* at 107 (quoting *Gass v. United States*, 416 F.2d 767, 770 (D.C. Cir. 1969); *United States v. Sandoval*, 709 F.2d 1553 (D.C. Cir. 1983); s*ee also United States v. Stone*, 960 F.2d 426, 436 (5th Cir. 1992). These factors are not meant to require "formalistic adherence" at the expense of the trial judge's discretion. The trial judge has broad discretion in determining whether this burden has been satisfied, and that determination will not be disturbed absent extraordinary circumstances. *United States v. Hughes*, 658 F.2d at 323; *Biggins*, 551 F.2d at 66-67.

The first two requirements are satisfied by testimony from the person who recorded the conversation that he was familiar with the equipment and that it was in proper working order at the time of the recording. Evidence sufficient to satisfy the accuracy element may be direct or circumstantial. *United States v. Haldeman*, 559 F.2d 31, 107 (D.C. Cir. 1976), *cert. denied*, 431 U.S. 933 (1977); *United States v. Bright*, 630 F.2d 804 (5th Cir. 1980). Where, with respect to a

tape recording of a conversation between a prosecution witness and the defendant, the witness identifies the voices on the tape and states that the conversation was the one he had conducted with the defendant at the time the recording was made, such testimony by the witness meets the requirements for authenticating or identifying the testimony as a condition precedent to its admission. *United States v. Albert*, 595 F.2d 283 (5th Cir. 1979), *cert. denied*, 444 U.S. 963 (1979). Furthermore, if the witness who is testifying was present at the time the conversation was recorded, identifies the tape and acknowledges its accuracy, the recording is admissible even though the witness did not retain custody of the tape. *United States v. Nace*, 561 F.2d 763 (9th Cir. 1977).

  The fact that some unidentified person may have had access to a tape recording in the government's custody does not affect the reliability of the foundation evidence so as to preclude admission into evidence of the recording. *Haldeman*, 559 F.2d at 109. The government need not call every employee who may have had access to the tape. When the government's showing of continuity of possession of real evidence is reasonably adequate, and no evidence is offered by the defendant suggesting any laxity in the custodial procedures of the government or any reasons why the exhibit should be regarded as in any way untrustworthy, such evidence cannot be deemed to have been improperly admitted on a theory of chain of custody. *Robinson v. United States*, 283 F.2d 508 (D.C. Cir. 1960), *cert. denied*, 364 U.S. 919 (1960).

  The possibility of alterations to the tape need not be eliminated absolutely, but only as a reasonable possibility. Moreover, the fact that a witness indicates he cannot be sure that certain statements were made on a particular date, rather than at some other time around that date, does not show that the tape recording, which intrinsically demonstrates that the conversation occurred

on that date in question, was tampered with so as to preclude its admission into evidence. *Haldeman*, 559 F.2d at 109; s*ee also United States v. Jacobs*, 451 F.2d 530, 541-542 (5th Cir. 1971), *cert. denied*, 405 U.S. 955 (1972) ("It is self-evident that a tape recording would be more accurate than the recollection of a witness a year or more after the conversation had occurred").

In addition to the circumstances enumerated above, a tape of a recorded conversation also may be admitted when a witness has been attacked for recent fabrication of his testimony or improper motivation of his testimony, as a prior consistent statement used to rehabilitate that witness. *Albert*, 595 F.2d at 289.

## II.   TRANSCRIPTS OF THE CONVERSATIONS ARE ALSO ADMISSIBLE

It is within the trial court's discretion to allow the jury to use a transcript to assist them in listening to a tape. *Slade,* 627 F.2d at 302; s*ee also United States v. Onori*, 535 F.2d 938 (5th Cir. 1976).  While the foundation for supplemental transcripts may be laid by having the person who made the transcript testify, the stenographer's testimony is unnecessary if someone else who either heard the tape or participated in the conversation assumes that task. *United States v. Rochan*, 563 F.2d 1246 (5th Cir. 1977).  Permitting the jury to have transcripts of tape recorded conversations between government witness and the defendant is not error on the basis that it amounts to prejudicial emphasis of the conversations. *Fountain v. United States*, 384 F.2d 624 (5th Cir. 1967), *cert. denied*, 390 U.S. 1005 (1968).

### A.   Providing Transcripts to the Jurors

Providing jurors with verbatim transcripts of relevant taped conversations is a recognized trial technique, and is within a trial court's sound discretion.  Doing so enables jurors to read a properly authenticated transcript while listening to the tape being played in open court.  *See*

*Slade*, 627 F.2d at 302; *United States v. Nickerson*, 606 F.2d 156, 158 (6th Cir. 1979); *United States v. Nashawaty*, 571 F.2d 71, 75 (1st Cir. 1978); *United States v. Turner*, 528 F.2d 143, 167-68 (9th Cir. 1975); *United States v. Bonanno*, 487 F.2d 654, 660 (2d Cir. 1973); *United States v. Hall*, 342 F.2d 849, 852 (4th Cir. 1965); *United States v. Brown*, 872 F.2d 385, 392 (11th Cir. 1989).

Furthermore, in *United States v. Holton*, 116 F.3d 1536, 1541 (D.C. Cir. 1997), the court concluded the following with respect to use of transcripts:

> Certainly a transcript can be helpful when the jury listens to replays of tape recordings during deliberations as well as during trial. Indeed, it might well confuse the jurors to permit them to use transcripts as a guide during trial, but not during deliberations. Moreover, without a transcript to guide them, the jury could find itself involved in repetitious and time consuming replaying of unintelligible recordings. Thus we agree with the other circuits that have held it is within the district court's discretion to permit the jury to use transcripts during deliberations. *See, e.g., United States v. Young,* 105 F.3d 1, 10-11 (1st Cir. 1997); *United States v. Delpit,* 94 F.3d 1134 (8th Cir. 1996); *United States v. Elder*, 90 F.3d 1110, 1129 (6th Cir.), cert. denied, ---- U.S. --- , 117 S.Ct. 529, 136, L.Ed.2d 415 (1996).

Depending on the circuit, transcripts of tape recordings are either substantive evidence or mere aids to the jury. For example, the First Circuit stated, "we have approved, as have most circuits, the use of transcripts as a jury aid in following tape recording play-backs." *United States v. Carbone*, 798 F.2d 21, 26 (1st Cir. 1986) ("The trial judge's instructions that the tapes, not the transcripts, constituted the evidence and that the tapes controlled if there was any difference between them reflected accurately the rule in this circuit."). The Second Circuit has generally allowed transcripts of tape-recordings to go to the jury room provided the accuracy of the transcripts is established at trial. *See, e.g.*, *United States v. Koska*, 443 F.2d 1167 (2d Cir. 1971) (the trial court allowed the jury to read a transcript while listening to five hours of tape

recordings and later allowed twelve copies of the transcript to go to the jury room in response to the jury's specific request).

Transcripts of tape recordings however, may also be admissible as substantive evidence. *Holton*, 116 F.3d at 1542; s*ee also Onori*, 535 F.2d at 949; *United States v. Rochan*, 563 F.2d 1246, 1251 (5th Cir. 1977); *United States v. Sutherland,* 656 F.2d 1181, 1200 n.15 (5th Cir. 1981); and *United States v. Cruz*, 765 F.2d 1020,1023 (11th Cir. 1985).  Of course, as with any other evidence, the court may choose to limit transcript admissibility to issues such as voice identification. *Onori*, 535 F.2d at 947.

Once a transcript is properly admitted the proponent has no special burden to prove its accuracy.  The courts have repeatedly stated that the ideal procedure for testing the accuracy of the transcript is to have the prosecution and defense attorneys stipulate to a transcript. *Slade*, 627 F.2d at 302; *McMillan*, 508 F.2d at 106; *Onori*, 535 F.2d at 948.    The *Onori* decision suggests procedures to address issues relating to the accuracy of a transcript.  First, the judge should encourage the parties to devise a stipulated transcript, "one to which all sides to the dispute can agree."  If a stipulation is not feasible, then a single "transcript can be prepared containing both versions of the disputed portions." Alternatively, "the jury can be given two transcripts, given the reasons for the disputed portions, and instructed that they are to determine for themselves which, if either, transcript accurately reflects particular portions of the recording." *Id.* at 948-49.  The latter method could necessitate playing the disputed portions of the tape twice—once with each transcript. *See, e.g., United States v. Chiarizio*, 525 F.2d 289 (2d Cir. 1975).  Whichever of the above methods is utilized, it is clear that the trial judge "need not necessarily listen to the tapes or pass on the accuracy of any transcript." *Id*. at 948.  As this Circuit has declared, both sides can

present their alternative transcripts and "...let the jury determine which one is more accurate." *Slade*, 627 F.2d at 302-03 (jury made aware that the transcripts offered only the government's interpretation);  *see also United States v. Llinas*, 603 F.2d 506, 509, (5th Cir. 1979), *cert. denied*, 444 U.S. 1079, (1980); *United States v. Zambrana*, 864 F.2d 494, 498 (7th Cir.1988).  It is unnecessary for the trial court to decide whether a transcript is accurate before that transcript is given to the jury as long as each side to the dispute is given an opportunity to submit a transcript containing its version of a conversation. *Onori*, 535 F.2d at 948.

**B.   Foreign Language Transcripts**

Where the recorded conversation is conducted in a foreign language, an English language transcript may be submitted to permit the jury to understand and evaluate the evidence.  *See United States v. Ben-Shimon*, 249 F.3d 98, 101 (2d Cir. 2001); *United States v. Font-Ramirez*, 944 F.2d 42, 49 (1st Cir. 1991) (permitting an English language jury to evaluate evidence of a tape recorded conversation in Spanish solely through use of a properly authenticated English language transcript.); *United States v. Cruz*, 765 F.2d 1020, 1024 (11th Cir.1985) (permitting an English language jury to consider translated transcripts as substantive evidence).

Courts have admitted English transcripts of foreign language conversations as substantive evidence in view of the fact that the jury would not understand the spoken foreign language featured in the recording.  *United States v. Wilson*, 115 F.3d 1185, 1189 (4th Cir. 1997); *United States v. Pena-Espinoza*, 47 F.3d 356, 359-60 (9th Cir. 1995); *United States v. Garcia*, 20 F.3d 670, 673 (6th Cir. 1994); *United States v. Gonzalez-Balderas*, 11 F.3d 1218, 1224 (5th Cir. 1994); *United States v. Calderin-Rodriguez*, 244 F.3d 977, 986 (8th Cir. 2001) (upholding the district court's evidentiary ruling at trial allowing an audiotape of telephone conversations in

Spanish to be played for the jury while providing the jury with English transcripts which were taken away after the tape was played). If the accuracy of the transcript is contested, competing transcripts may be submitted to the jury.

Foreign language transcripts and translations are authenticated in essentially the same manner as English language transcripts, except the proponent should also "provide testimony as to how they were prepared, the sources used, and the qualification of the person who prepared them." *United States v. Carbone*, 798 F.2d 21, 26 (1st Cir. 1986); *United States v. Cruz*, 765 F.2d 1020, 1023 (11th Cir. 1985); *United States v. Rizk*, 842 F.2d 111, 112 (5th Cir. 1988); *United States v. Zambrana*, 864 F.2d 494, 494 (7th Cir. 1988).

As with English language transcripts, the preferred procedure as discussed *supra* is that the government and the defendant should first attempt to agree upon and provide a single "stipulated" transcript. Failing this, the parties should be afforded the opportunity to submit their own version, and to present evidence to support or authenticate their version and/or challenge the accuracy of the other party's foreign language transcript. See generally *United States v. Chalarca*, 95 F.3d 239, 246 (2d Cir. 1996).

## C.    Voice Identification and Date Headings

One of the principal reasons for having a transcript is to help identify the speakers on the tape. *United States v. Calderin-Rodriguez*, 244 F.3d 977, 986 (8th Cir. 2001). The foundation for the voice identifications can be established by testimony of the participants in the conversations, or other witnesses familiar with the speaker's voice. *Id*. at 987.

In this case, the government plans to introduce the tapes and transcripts and then put the witnesses to the conversations and investigating agents on the stand to authenticate and explain

these conversations. *See, e.g., Calderon-Rodrigue*, 244 F.3d at 358. The government has turned over to the defendants copies of all recordings as well as transcripts of calls the government may introduce during the case-in-chief. Inasmuch as the calls are all in Spanish and are key evidence, defense counsel unquestionably has known from the outset that English-translation transcripts would be central to the prosecution's case. Attorneys for the defendants will have full opportunity to cross examine the witnesses who identify the voices on the tapes. Once the names of the speakers have been identified by witnesses testifying at trial, allowing the names to appear on the transcripts not only is proper, but will assist the jury.

Whether the witnesses correctly identify the speakers on the recordings is an issue for the jury to decide. As long as there is a basis for the jury to resolve the authenticity question in favor of the party offering a tape recording, arguments regarding the reliability of the identification go to the weight of the evidence, not its admissibility. *United States v. Capers*, 61 F.3d 1100, 1106 (4th Cir.1995); *United States v. Kandiel*, 865 F.2d 967, 974 (8th Cir. 1989).

### III.   PROPOSED TRIAL TRANSCRIPT PROCEDURES

Consistent with Section V, subsection L of this Court's "Trial Procedures" order issued May 13, 2008 (ECF Doc. 50), the government's position is that any issues relating specifically to the admissibility of transcripts/translations of tape recording evidence be resolved by way of pre-trial stipulation. In support of this position, the government emphasizes that it advised defense counsel on July 1, 2008 that the previously provided transcripts/translations of recordings are in "near finalized" form for the purposes of resolving disputes over any alleged inaccuracies between the transcripts and recordings per this Court's instructions and reaching a pre-trial stipulation (see attached Exhibit A). The government now asserts that the substantive text of all

previously provided transcripts/translations, except for the recording labeled "N-115,"[1] are in finalized format.  As such, the only anticipated changes to the transcripts/translations involve minor formatting designed to aid the Court, counsel, and the jury during trial, such as the addition of uniform headers containing identifying information including the date and time of the conversation, and the insertion of line and/or page numbers, as well as the names of the speakers, which the Confidential Source–a party to the conversations–will testify to.

With regard to any transcripts for which no stipulation has been reached, the government intends to call as a witness the individual who transcribed/translated the recording to be introduced in order to establish the accuracy of the transcript/translation.

Furthermore, in order to assist defense counsel and the Court, and in hopes of allowing the trial to proceed as smoothly as possible, the government intends to provide all parties with a binder at least five days prior to trial containing the exact transcripts it plans on introducing into evidence, with the relevant portions of the conversation that it plans on playing for the jury highlighted.

The government intends to introduce the entire transcript and entire audio/video recording, but play only the relevant portion for the jury.  This procedure was recently utilized during trial by Judge James Robertson in *United States v. Anayibe Rojas Valderrama*, *et, al.*, Cr.No. 03-554 (D.D.C. 2006), and allowed the trial to progress in an easy-to-follow and expeditious manner.  The government has no objection to defense counsel following this same

---

[1] N-115 is currently in the process of being reviewed by a court-certified translator for accuracy.  Any revision to the previously provided transcript/translation will be turned over to defense counsel as soon as it is available.

procedure, in addition to admitting their own transcripts with highlighted portions they consider relevant, in their own case.

## CONCLUSION

For all these reasons, the governments submits that English translations of Spanish language recordings, with the speakers identified, should be admitted as substantive evidence to permit the jury to best understand and evaluate the evidence presented during trial. The government further submits that the proposed transcript procedures ought to be utilized to best promote efficiency during the course of the trial.

Respectfully submitted,

/s/
Jim Faulkner
Trial Attorney
Narcotic and Dangerous Drug Section
Criminal Division
U.S. Department of Justice
1400 New York Ave., NW, 8th Floor
Washington, D.C. 20005
202-514-0928
Jim.Faulkner@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this pleading was delivered to all parties via ECF on this date, July 9, 2008.

/s/
Jim Faulkner