UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | Crim. No. 06-101 (GK) |
| v. ) | |
| ) | |
| HAROL RODRIGO SUAREZ-GARCIA ) | |
|   a/k/a "Jose Luis Herrera," a/k/a ) | |
|   "Chico," a/k/a "Dominick," ) | |
| ) | |
| NESTOR DARIO CASTRO, ) | |
|   a/k/a "Alberto," ) | |
| ) | |
|   Defendants. ) | |

**MEMORANDUM OF LAW ON DISCLOSURE AND USE OF
LAW ENFORCEMENT AGENTS' REPORTS AND NOTES AT TRIAL**

The United States of America, by and through the undersigned attorney, hereby submits a Memorandum of Law to the court on the application of the *Jencks Act* to reports and cables prepared by Drug Enforcement Administration ("DEA") Special Agents (referred to as "DEA-6 reports"),[1] reports by foreign law enforcement officers, and rough notes used by domestic and foreign law enforcement agents to prepare their final reports.

1. **Factual Background:**

As part of the investigation in this case, DEA agents have interviewed a number of potential witnesses, including the cooperating source (CS) and foreign law enforcement officers in an undercover capacity (UC). At times during these interviews, the DEA agents may have made notes of things they deemed significant, often including their own interpolations in the notes. They did not record the entire interview. Moreover, many of the discussions were conducted in Spanish, utilizing interpreters. Notes taken during interviews with Spanish

---

[1] The DEA-6 reports were turned over to defense counsel during the course of discovery.

speaking witnesses are based on summaries by the interpreter of the witnesses' responses, not verbatim translations. Thus, DEA agents' rough notes of these interviews, which were used to prepare the final DEA-6 reports, do not qualify as *Jencks* material. First, the rough notes are not "substantially verbatim recordings or transcriptions of oral statements." Second, the rough notes were never "signed or otherwise adopted" by the witness. Therefore, rough notes will not be provided to the defense. The DEA-6 reports also do not qualify as *Jencks* material, which can be used to impeach the CS or other non-DEA agent witnesses, because the reports do not contain substantially verbatim statements of the witnesses. In good faith and to give the defendants a fuller picture of the case, the Government already turned over all DEA-6 reports. However, because the DEA-6 reports do not constitute *Jencks,* the defendants should be precluded from utilizing them while cross-examining the Government's witnesses. The same rule should apply to any foreign law enforcement reports that mention or summarize a conversation with the CS or another government witness. The Government will, of course, turn over any verbatim reports or notes made or adopted by a witness, and the defendants can use those documents for impeachment purposes.

**2. Legal Analysis:**

The *Jencks Act*, codified at 18 U.S.C. §3500 et seq., provides that, after a witness called by the government has testified on direct examination, the defendant may discover that witness's pretrial statements, if the statements are in the Government's possession and relate to the subject matter of the witness's testimony. See 18 U.S.C. §3500(b); see also Fed. R. Crim. P. 26.2.[2] A "statement" under the Jencks Act is defined as follows: (1) written statements that are signed or otherwise adopted or approved by the witness; (2) substantially verbatim recordings or

---

[2] Rule 26.2 incorporates the Jencks Act into the Federal Rules of Criminal Procedure.

2

transcriptions of oral statements; and (3) grand jury testimony. 18 U.S.C. § 3500 (e). Thus, in the case at bar, the question becomes whether the statements being attributed to the witnesses are either substantially verbatim and contemporaneously recorded, or approved by the witnesses. DEA-6 reports and rough notes detailing witness interviews of the CS and UC's are neither substantially verbatim, nor approved by the witness. Furthermore, the DEA agents never approved the rough notes, meaning the notes are not subject to *Jencks* disclosure when the agents testify.

  Shortly after the passage of the *Jencks Act*, the Supreme Court defined the parameters of a "statement" for *Jencks Act* purposes. Palermo v. United States, 360 U.S. 343 (1959). "One of the most important motive forces behind the enactment of [the *Jencks Act*] was the fear that an expansive reading of the [*Jencks* Case] would compel the undiscriminating production of agents' summaries of interviews regardless of their character or completeness." Id. at 350. Accordingly, Congress limited production to documents that are truly the witness's own statement, as opposed to someone else's summary or interpretation of what the witness said:

> It was felt to be grossly unfair to allow the defense to use statements to impeach a witness which could not fairly be said to be the witness' own rather than the product of the investigator's selections, interpretations, and interpolations . . . It is clear that Congress was concerned that only those statements which could properly be called the witness' own words should be made available to the defense for purposes of impeachment. It was important that the statement could fairly be deemed to reflect fully and without distortion what had been said to the government agent . . . . [S]ummaries of an oral statement which evidence substantial selections of material, or which were prepared after the interview without the aid of complete notes, and hence rest on the memory of the agent are not to be produced.

Id. at 350, 352-54.  Accordingly, the Supreme Court affirmed the District Court's ruling that a memorandum regarding a witness interview prepared by a government agent was not subject to *Jencks* disclosure.

The D.C. Circuit has consistently held that the *Jencks Act* does not apply to an agent's rough notes or report of a witness interview.  In United States v. Donato, 99 F.3d 426 (D.C. Cir. 1997), the defendant claimed that, pursuant to the *Jencks Act*, the government should have been required to produce notes and reports regarding an interview of a cooperating witness that were prepared by a government agent.  Id. at 433.  The Court of Appeals rejected this claim, holding:

> the Supreme Court explained that the Jencks Act covered statements that could fairly be used by the defense to impeach a government witness.  In order that this goal be achieved, these statements had to be limited to those that could properly be called the witness' own words. [citation omitted] Notes from an interview with a witness that were not the whole interview but rather a "substantial selection" of the interview were not covered. [citation omitted] Here, the agent testified that he included in his account of his interview with [the witness] everything that he (the agent) considered pertinent.  The agent engaged in "substantial selection," recording not the entire interview, but only those portions he found pertinent.  Under Palermo, the agent's notes and 302 report from his pre-trial interview with [the witness] are not covered by the Jencks Act.

Id..  Similarly, the D.C. Circuit recently held that, "[u]nder the definition in subparagraph (e), notes of a conversation are not generally Jencks Act material (unless they represent a full transcription) (citation omitted), but a statement that is handwritten and approved by the witness is Jencks Act material." United States v. Oruche, 484 F.3d 590 (DC Cir. 2007).  See also United States v. Thomas, 97 F.3d 1499, 1502 (DC Cir. 1996) ("The Jencks Act does not apply unless the

4

witness has signed or otherwise adopted or approved the writing"; thus, only signed statements fall under the *Jencks Act*).[3]

As such, in the instant case, the agents' rough notes and DEA-6 reports do not fall under the purview of the *Jencks Act* because they are not "substantially verbatim recording or transcription" of oral statements from the interviewed witnesses. Thus, because the DEA-6 reports do not constitute statements under the *Jencks Act*, the defense cannot use the information contained in the DEA-6 reports to impeach the Government's interviewed witnesses. See Palermo, 360 U.S. at 350 (Congress's intention was that witnesses only be impeached with what may fairly be considered their own words). Additionally, the agents have not "signed or

---

[3] Other Circuit Courts have routinely reached the same conclusion that government summaries, such as the DEA-6 reports in this case, do not qualify as "statements" under the Jencks Act. See, e.g., United States v. Jordan, 316 F.3d 1215, 1255 (11th Cir. 2003) (agent's interview notes not Jencks because "substantially verbatim' means using nearly the exact wording or phrasing the witness uttered"); Duncan v. Cain, 278 F.3d 537, 539 (5th Cir. 2002) (police notes of witness interview not Jencks); United States v. Marrero-Ortiz, 160 F.3d 768, 776 (1st Cir. 1998) ("A written summary of a witness interview is not a statement unless the evidence shows that the witness adopted the notes, a phenomenon that would occur, for example, if 'the interviewer read the statement back to the witness and . . . the witness approved the statement.'"); United States v. Ramos, 27 F.3d 65, 69-70 (3d Cir. 1994) (agent's notes of interview with cooperating co-conspirators not Jencks because not substantially verbatim); United States v. Farley, 2 F.3d 645, 654 (6th Cir. 1993) (holding that agent summaries of witness interview not disclosable), cert. denied, 510 U.S. 1030 (1993); United States v. Phibbs, 999 F.2d 1053, 1089 (6th Cir. 1993) (pretrial interview notes not Jencks because not substantially verbatim); United States v. Williams, 998 F.2d 258, 269 (5th Cir. 1993) ("Although the Forms 302 were based on the FBI agents' interview with [the witness], they were not signed by [the witness], nor do they contain substantially verbatim statements by [the witness] relating to the subject matter on which [the witness] testified, as opposed to 'scattered jottings' made by the FBI agents. . . . The FBI Forms 302 were not discoverable statements under the Jencks Act."); United States v. Marshall, 985 F.2d 901, 907 (7th Cir.1993) ("An agent's summary of a witness' oral statement that is not signed or adopted by the witness is not subject to disclosure under the Jencks Act."); United States v. Simtob, 901 F.2d 799, 809 (9th Cir. 1990) ("A government agent's rough notes will not be Jencks Act statements when they 'are not complete, are truncated in nature, or have become an unsiftable mix of witness testimony, investigator's selections, interpretations, and interpolations.'"); United States v. Walden, 578 F.2d 966, 970 (3rd Cir. 1978) (rough notes and drafts used to prepare final report not *Jencks* material as a matter of law); United States v. Carrasco, 537 F.2d 372, 377 (9th Cir. 1976) (comment in dicta that preliminary notes used to prepare final report are not covered by the *Jencks Act*).

otherwise adopted or approved the writing" contained in their rough notes.  Accordingly, the agents' rough notes do not constitute *Jencks* material for the agents and do not have to be turned over to the defendants, nor can the rough notes be used to impeach the agents or the witnesses they may have interviewed.

Foreign law enforcement reports and notes are similar to reports and notes by United States law enforcement.  Thus, in accordance with the case law cited above, if the foreign law enforcement reports and notes are not verbatim and not signed, then the documents may not be used to impeach the interviewed witnesses.  Moreover, the defendants also may not use unsigned notes by foreign law enforcement agents to impeach those agents if they testify.

### 3. Conclusion

The government will continue to make every effort to ensure that all material covered by the *Jencks Act* is provided to the defendants.  The government is not seeking to circumscribe the defendants efforts to discover statements of the witnesses or examine the witnesses as to the existence of other *Jencks* material.  Rather, the government only seeks to limit discovery, disclosure, and use of materials which do not fall within the *Jencks Act*.  With that in mind, the court should note two things.  First, the DEA-6 reports provided during discovery are not *Jencks* as to the interviewed witnesses, and thus not available to use for impeachment at trial.  Second, all preliminary notes written by agents that were used to prepare final DEA-6 reports are not *Jencks* for either the agents or the interviewed witnesses, and therefore are not subject to disclosure.

Respectfully Submitted,

_____/s/_____
James A. Faulkner
Trial Attorney
Narcotics and Dangerous Drug Section
U.S. Department of Justice
1400 New York Ave., NW 8th Floor
Washington D.C. 20005
202-514-0917
Jim.faulkner@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this pleading was delivered to all parties via ECF on this date, July 17th, 2008.

_____/s/_____
James A. Faulkner